# Kramer Levin



**Barry H. Berke**
Partner
T  212.715.7560
F  212.715.7660
bberke@KRAMERLEVIN.com

1177 Avenue of the Americas
New York, NY 10036
T  212.715.9100
F  212.715.8000

May 30, 2024

**BY ECF**

Hon. Alvin K. Hellerstein
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

      Re: <u>United States v. Sung Kook (Bill) Hwang, et al.</u>, No. 22 Cr. 240 (AKH)

Dear Judge Hellerstein:

      On behalf of defendant Bill Hwang, we respectfully renew our motion to strike lines 1911:5 to 1912:19 of the May 29, 2024 trial testimony of prosecution lay witness, Chris Salcedo. Mr. Salcedo's testimony constitutes improper expert testimony on the one hand and inadmissible speculation on the other.  Specifically, Mr. Salcedo, whom the prosecution did not notice—much less attempt to qualify—as a securities-market expert, testified that certain hypothetical market positions would be "untenable," "reckless," and even result in "cornering the market."  These opinions do not "rest[ ] on a reliable foundation," *Daubert v. Merrill Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597 (1993), are nothing more than ad-libbed responses to unexpected questions, and are entirely improper.

      During his direct testimony yesterday afternoon, Mr. Salcedo opined on the reasonableness of portfolio concentrations based on hypothetical assumptions about Archegos's market capitalization at other brokers:

> A. That means that GSX -- the position in GSX at UBS for Archegos was 7 percent of the market capitalization of GSX overall.
> Q. So if it had been replicated at other brokers, would that number be higher?
> A. That number would be higher. And what I was saying in this email is that our portfolio is large enough, our portfolio at UBS is concentrated enough, and it would be untenable for these positions, these non-mega cap names, it would be untenable for them to be replicated across other brokers.
> Q. What do you mean by "untenable"?
> A. Meaning, besides -- meaning, it would be reckless.

>   Q. Did you think that there could have been 7 percent of market cap replicated at numerous brokers?
>   MS. ESTES: Objection.
>   THE COURT: Change the question.
>   Q. At this time in your assessment of the risk --
>   THE COURT: What do you mean by "untenable"? What is untenable? What do you mean by that?
>   THE WITNESS: **Not able to be supported and quite frankly reckless. It was too much -- too much risk in these names.** They were too much of a -- they would have been too much of a participant in these names. Effectively -- I don't want to add jargon, but **they would have been a whale in these names, which just means they would have price makers of these stock and not price takers. They would have been cornering the market in the securities.**
>   **MS. ESTES: Objection, move to strike.**
>   **THE COURT: Overruled.**

Trial Tr. at 1911:2-1912:5 (May 29, 2024).

Mr. Salcedo then continued to opine on whether Archegos's trades would have been capable of impacting stock prices if it had 7 percent market capitalization at other brokers:

>   Q. You've just used the term "price maker" not "price taker" a few times.  Can you explain what that means?
>   MS. ESTES: Objection.
>   THE COURT: Overruled.
>   A. Sorry.  The question one more time?
>   THE COURT: What do you mean by price taker and price maker?
>   THE WITNESS: So what we simply mean is that – with the buying power that Archegos has and the portfolio that's in front of them, they would have been -- **with their buying, they could have been driving the price up, and with their selling, they would have been driving the price down.**
>   **MS. ESTES: Objection, move to strike.**
>   **THE COURT: Overruled.**

*Id.* at 1912:6-19.

Mr. Salcedo's testimony constitutes improper expert opinion and therefore must be struck.  "If the opinion rests 'in any way' upon scientific, technical, or otherwise specialized knowledge, its admissibility must be determined by reference to Rule 702, not Rule 701." *United States v. Garcia*, 413 F.3d 201, 215 (2d Cir. 2005) (quoting 4 Weinstein Fed. Evid. § 701.03[1]).  This requirement prevents a party from "conferring an aura of expertise on a witness without satisfying the reliability standard for expert testimony set forth in Rule 702 and the pretrial disclosure requirements set forth in Fed. R. Crim. P. 16." *Garcia*, 413 F.3d at 215.  Here, Mr. Salcedo's analysis of the riskiness of Archegos's portfolio, and the effect on the market that its trading would have had if it had held certain positions, is exactly the sort of specialized, technical analysis that is beyond the ken of a lay witness.  Specifically, the prosecution has failed to establish that Mr. Salcedo has any foundation to judge whether there is "too much risk" in certain securities and conclude that a hypothetical scenario was "quite frankly reckless"; that Mr. Salcedo knows the industry definition for "cornering the market," much less reliably applied it;

and that Mr. Salcedo understands the specialized jargon of the securities market, such as "whale," "price maker," and "price taker," and reliably applied it here.  *See Bank of China, New York Branch v. NBM LLC*, 359 F.3d 171, 182 (2d Cir. 2004) (it was improper to permit lay witness to testify on "definitions of banking terms").

Furthermore, Mr. Salcedo's unqualified expert testimony is also wholly improper because his opinion that Archegos's alleged trading "would have been cornering the market in the securities" is a clear attempt to invade the province of the jury on an ultimate issue in the case: whether Mr. Hwang intended to dominate the market of the securities traded.  As the Second Circuit has made clear, such testimony is improper, because it "poses a uniquely heightened danger of intruding on the jury's function."  *United States v. DiDomenico,* 985 F.2d 1159, 1164 (2d Cir. 1993).

Even if Mr. Salcedo's opinions did not constitute expert testimony requiring specialized knowledge, they still must be struck because they have no foundation in his personal observations and are instead based on pure speculation.  Federal Rule of Evidence 701 requires that lay witness opinions be "rationally based on the witness's perception."  Fed. R. Evid. 701(a); *see also United States v. Kaplan,* 490 F.3d 110, 119 (2d Cir. 2007) (excluding lay opinion where witness's testimony failed to establishing that the opinion was based on personal observation).  "When a witness has not identified the objective bases for his opinion, the proffered opinion obviously fails completely to meet the requirements of Rule 701, first because there is no way for the court to assess whether it is rationally based on the witness's perceptions, and second because the opinion does not help the jury but only tells it in conclusory fashion what it should find."  *United States v. Rea,* 958 F.2d 1206, 1216 (2d Cir. 1992).  Here, Mr. Salcedo offered no factual basis for his opinion that it would be "untenable" and "reckless" for Archegos to hold similar positions at other banks as it held at UBS.  Rather, in response to the Court's inquiry, he extemporaneously speculated that there was "too much risk in these names" and that, had Archegos held such large positions, it "would have been a whale in these names" and "would have been cornering the market in the securities."  Without any foundation based on Mr. Salcedo's personal observations, they must be excluded.  *See Rea,* 958 F.2d at 1215 ("Rule 701's helpfulness requirement is designed to provide 'assurance[ ] against the admission of opinions which would merely tell the jury what result to reach.'") (citing Fed. R. Evid. 704 Advisory Committee Note on 1972 Proposed Rules).

For the foregoing reasons, Mr. Hwang respectfully requests that the Court strike lines 1911:5 to 1912:19 from the trial testimony, and preclude Mr. Salcedo from presenting any similar testimony during the remainder of his testimony.

Respectfully submitted,

*/s/ Barry H. Berke*

Barry H. Berke
Dani R. James
Jordan Estes
Michael Martinez

cc:    Counsel of record