**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>SUNG KOOK (BILL) HWANG,<br><br>Defendant. | : | 22 Cr. 240 (AKH) |

**MEMORANDUM ON BEHALF OF BILL HWANG ADDRESSING RESTITUTION AND FORFEITURE**

Brian A. Jacobs
Chloe Lewis

MORVILLO ABRAMOWITZ GRAND IASON & ANELLO P.C.
565 Fifth Avenue
New York, NY 10017
(212) 856-9600 (telephone)
(212) 856-9494 (facsimile)

*Counsel for Defendant Bill Hwang*

## TABLE OF CONTENTS

Page

I. Relevant Facts ..... 3

II. The Submissions from the Government and the Probation Office Do Not Satisfy the Requirements of the Restitution Statutes or Fed. R. Crim. P. 32(c)(1)(B) ..... 6

III. The Court Should Decline to Impose Restitution Because Any Need for Restitution is Outweighed by the Burden on the Sentencing Process ..... 8

IV. The Court Should Decline to Impose Restitution Because the Government has Failed to Meet Its Burden to Establish by a Preponderance of the Evidence that Actual Losses to Victims Were Caused by the Offense Conduct and the Amount of Any Losses ..... 11

A. The Government Has Not Established that Mr. Hwang's Conduct Caused the Victims' Losses ..... 12

B. The Government Has Not Established the Amounts of the Victims' Losses ..... 15

V. The Court Should Decline to Order a Forfeiture Money Judgment ..... 32

VI. Conclusion ..... 34

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Honeycutt v. United States*, 581 U.S. 443 (2017) ........ 33

*Hsu v. United States*, 954 F. Supp. 2d 215 (S.D.N.Y. 2013) ........ 8, 10

*Lagos v. United States*, 584 U.S. 577 (2018) ........ 24

*United States v. Dharia*, 284 F. Supp. 3d 262 (E.D.N.Y. 2018) ........ 10

*United States v. Afriyie*, 27 F.4th 161 (2d Cir.) ........ 24, 25

*United States v. Agnew*, 171 F. Appx. 376 (2d Cir. 2006) ........ 18

*United States v. Awad*, 598 F.3d 76 (2d Cir. 2010) ........ 33, 34

*United States v. Catoggio*, 326 F.3d 323 (2d Cir. 2003) ........ 9

*United States v. Donaghy*, 570 F. Supp. 2d 411 (E.D.N.Y. 2008) ........ 11

*United States v. Ferguson*, 584 F. Supp. 2d 447 (D. Conn. 2008) ........ 8

*United States v. Germosen*, 139 F.3d 120 (2d Cir. 1998) ........ 11

*United States v. Goodrich*, 12 F.4th 219 (2d Cir. 2021) ........ 7, 12, 13

*United States v. Gushlak*, 2011 WL 3159170, (E.D.N.Y. July 26, 2011) ........ 7

*United States v. Gushlak*, 728 F.3d 184 (2d Cir. 2013) ........ 11

*United States v. Hernandez*, 2009 WL 113267 (D. Conn. Jan. 15, 2009) ........ 7

*United States v. Hild*, 19-cr-602 (RA)(KHP) (S.D.N.Y.) (Dkt. 198) ........ 3

*United States v. Jaffe*, 314 F. Supp. 2d 316 (S.D.N.Y. 2004) (AKH) ........ 30

*United States v. Jones*, 475 F.3d 701 (5th Cir. 2007) ........ 8

*United States v. Marino*, 654 F.3d 310, 321-24 (2d Cir. 2011) ........ 15

*United States v. Reifler*, 446 F.3d 65 (2d. Cir. 2006) ........ 9

*United States v. Rutkoske*, 506 F.3d 170 (2d Cir. 2007) ........ 9

*United States v. Sharma*, 2021 WL 861353 (S.D.N.Y. Mar. 8, 2021) ........ 2, 10

*United States v. Surgent*, 2009 WL 2525137 (E.D.N.Y. Aug. 17, 2009) ........ 33

*United States v. Waknine*, 543 F.3d 546 (9th Cir. 2008) ........ 8

*United States v. Zafar*, 291 F. Appx. 425 (2d Cir. 2008) ........ 18

*United States v.Tsosie*, 639 F.3d 1213 (9th Cir. 2011) ........ 7

**Statutes, Rules, and Other Authorities**

18 U.S.C. § 1963 .................... 33

18 U.S.C. § 3663(a)(1)(B)(ii) .................... 8

18 U.S.C. § 3663A(a)(2) .................... 12

18 U.S.C. § 3663A(b)(4) .................... 24

18 U.S.C. § 3663A(c) .................... 2, 8, 34

18 U.S.C. § 3664(a) .................... 1, 6

18 U.S.C. § 3664(d)(5) .................... 1, 3, 12, 34

18 U.S.C. § 3664(f)(2) .................... 10

18 U.S.C. §981(a)(1)(c) .................... 33

28 U.S.C. §2461(c) .................... 33

[redacted] .................... 17

U.S.S.G. § 2B1.1 n.(C)(i) .................... 13

Fed. R. Crim. P. 32(c)(1)(B) .................... 1, 6

Defendant Bill Hwang respectfully submits this memorandum to address the issues of restitution in advance of Mr. Hwang's sentencing on November 20, 2024.[1]  The Court should decline to impose restitution because the government's request for a massive restitution order is unsupported, unnecessary, and unjustified.  In the alternative, at most, the Court should defer the determination of restitution on the terms described below.

First, the government's request for restitution is unsupported because the government and the Probation Office have both failed to meet the requirements of the relevant rules and statutes. Rule 32(c)(1)(B) of the Federal Rules of Criminal Procedure states that "the probation officer must conduct an investigation and submit a report that contains *sufficient information* for the court to order restitution." Fed. R. Crim. P. 32(c)(1)(B) (emphasis added).  Section 3664(a) of Title 18, United States Code, further requires that the presentence report include "a *complete accounting* of the losses to each victim." 18 U.S.C. § 3664(a) (emphasis added).  Where victim losses "are not ascertainable by the date that is 10 days prior to sentencing," the government is required to inform the Court, which may delay determining restitution by 90 days. 18 U.S.C. § 3664(d)(5).[2]  The government and the Probation Office have not complied with these basic requirements.  The Presentence Report does not contain a "complete accounting" of losses or "sufficient information for the court to order restitution," and the government did not inform the

---

[1] Mr. Hwang has retained Morvillo Abramowitz Grand Iason & Anello P.C. as counsel for purposes of addressing the issue of restitution, and counsel submits this memorandum on behalf of Mr. Hwang to assist the Court in its resolution of the restitution issues here.

[2] The government produced to the defense for the first time several materials relating to restitution on the evening of November 15, 2024, with no explanation for why the government did not seek an extension from the Court, as required, ten days prior to sentencing.  The government's failure to submit restitution materials on the required schedule is particularly inexplicable given the government's representation, in its sentencing submission, that it "stands ready to present witnesses from each and every bank" should the Court order a hearing on loss. (Gov. Sentencing Submission at 25.)

Court ten days prior to sentencing that losses are not ascertainable. Even now, the government takes the position that the Court should impose restitution and then "amend" any restitution order as "further losses" come to light. (Gov. Sentencing Submission at 56.) The law does not allow what the government seeks, and the Court should not impose restitution at all.

The government's request for restitution is also unnecessary because it is well established that a Court may decline to impose restitution in cases where "determining complex issues of fact related to the cause or amount of the victim's losses would complicate or prolong the sentencing process to a degree that the need to provide restitution to any victim is outweighed by the burden on the sentencing process." 18 U.S.C. § 3663A(c)(3). The determination of restitution here is impractical due to the complicated facts and prolonged process entailed. Even the government's submission effectively acknowledges that the government cannot provide a complete accounting of losses at this time because "victims may provide still further losses" such that "any restitution order drafted now may still need to be amended." (Gov. Sentencing Submission at 56.) Further, in the unique circumstances of this case, the determination of restitution may well be a waste of resources to the extent that the Court orders forfeiture, as the putative victims will remain able to seek compensation from any amounts forfeited pursuant to the government's remission program. *See, e.g.*, *United States v. Sharma*, 2021 WL 861353, at *3 (S.D.N.Y. Mar. 8, 2021) (concluding that a remission program was preferable to restitution because of the "large number of victims and the difficulty of ascertaining their specific losses").

Finally, the government's request for restitution is unjustified, where the materials the government has provided to the Court do not carry the government's burden to show, by a preponderance of the evidence, either that the asserted victims' losses were caused by Mr. Hwang's offense conduct, or that the loss categories sought are properly the subject of a

restitution order. In fact, the victim impact statements contain multiple requests for losses that are not compensable, even if established by a preponderance of the evidence.

For these reasons, the Court should decline to impose restitution as part of Mr. Hwang's sentence. In the alternative, at most, the Court should defer the determination of restitution by 90 days, *see* 18 U.S.C. § 3664(d)(5), order the government to submit supporting documentation, and afford Mr. Hwang the opportunity to respond. In particular, the Court should order that the government's restitution submission include sworn affidavits or declarations from each of the victims explaining the basis for any restitution calculation and attaching all necessary supporting materials. *See, e.g., United States v. Hild*, 19 Cr. 602 (RA)(KHP) (S.D.N.Y.), Dkt. 198 (ordering government to submit a spreadsheet with restitution calculations as well as "an affidavit/declaration" from each victim "explaining the basis of any calculations" and attaching all necessary records, "affirming their authenticity").[3]

Finally, separate and apart from the questions relating to restitution, for the reasons set out below, the Court should also decline to impose a forfeiture money judgment.

## I. Relevant Facts[4]

[redacted]

[3] The government's sentencing submission states that "the Government stands ready to present witnesses from each and every bank at a *Fatico* hearing should the Court desire it," and proffers in multiple instances the specific proof it expects it would elicit at such a hearing. (Sentencing Memorandum of the United States of America, 22-cr-240 (AKH) (S.D.N.Y. Nov. 15, 2024), Dkt. 340 ("Gov. Sentencing Submission") at 25, 29, 30.) To the extent the Court does not deny restitution outright, the Court should hold the government to its promise to provide proof and afford the defendant the ability to respond.

[4] This memorandum redacts material referencing the victim impact statements that were filed under seal with this Court, but takes no position on whether those materials should remain sealed. To the extent the Court unseals those materials, an unredacted version of this



memorandum may be publicly filed as well. For the Court's convenience, both a redacted and an unredacted version of this memorandum will be provided to Chambers and the government.

5

The government filed a Sentencing Memorandum on November 15, 2024, in which it acknowledged that "the victims may provide still further losses and . . . any restitution order drafted now may still need to be amended." (Gov. Sentencing Submission at 56.) In the submission, the government claims for the first time that a ninth bank, BMO Capital Markets ("BMO"), is entitled to recover restitution for its loss of $5,647,545.87. (*Id.* at 24.) Although the submission also asserts that "[t]he Archegos entities' losses also encompass the loss of deferred compensation amounts due to individual employees" in the amount of $33,068,780.91 (*see id.* at 28), this figure seems not to factor into the government's calculation of restitution. The government also attached a Proposed Order of Restitution ordering Mr. Hwang to pay $9,834,015,685.36 (a number that appears to be based on the miscalculation in the PSR) "immediately" pursuant to 18 U.S.C. § 3572(d)(1) and without regard to Mr. Hwang's economic circumstances relative to the amount of restitution. (Proposed Order of Restitution, 22-cr-240 (AKH) (S.D.N.Y. Nov. 15, 2024), Dkt. 340-2 at 1-2.)

Neither the Probation Office nor the government has put forth any supplemental explanation of how the information contained in the victim impact statements suffices to carry the government's burden of demonstrating the amount of loss sustained by each victim and that

was caused by the offense conduct. There are also numerous discrepancies between the Presentence Report and the government's submissions. Of the existing victim impact statements, several claim losses that do not match the "restitution amounts" listed in the PSR.

## II. The Submissions from the Government and the Probation Office Do Not Satisfy the Requirements of the Restitution Statutes or Fed. R. Crim. P. 32(c)(1)(B)

The Court should decline to impose restitution because neither the Probation Office nor the government has met the requirements of the applicable law.

The MVRA requires the Probation Office "to obtain and include in its presentence report . . . information sufficient for the court to exercise its discretion in fashioning a restitution order." 18 U.S.C. § 3664(a); *see also* Fed. R. Crim. P. 32(c)(1)(B), (d)(2)(D) ("If the law permits restitution, the probation officer must conduct an investigation and submit a report that contains sufficient information for the court to order restitution."). To meet this standard, the report must include, among other things to the extent practicable, "a *complete accounting* of losses to each victim, . . . and information relating to the economic circumstances of each defendant." 18 U.S.C. § 3664(a) (emphasis added). Section 3664(a) further provides that if "circumstances exist that make this requirement clearly impracticable, the probation officer shall so inform the court." *Id.*

The Presentence Report does not come close to making a "complete accounting of losses." To the contrary, the Report explicitly states that "the total restitution amount has yet to be determined." (PSR ¶ 198; *see also* PSR at 74, Sentencing Recommendation (for restitution, stating, "Total amount to be determined").) As noted above, the Report goes on to list eight victim-banks and a purported "restitution amount" for each entity – two of which are merely estimates – but miscalculates the total restitution by more than $200 million. The Report lacks any investigation or analysis of which victims, if any, suffered actual losses. The Report also

fails to address whether the offense conduct is the direct and proximate cause of the purported losses. In sum, the information in the Presentence Report does not satisfy Section 3664 or Rule 32 and is insufficient for this Court to order restitution.

The government's sentencing submission does nothing to remedy the deficiencies in the Presentence Report. As to restitution, the government's submission includes the statement that the amount it seeks is "based on victim submissions received to date." (Gov. Sentencing Submission at 56.) Although the government's submission includes a declaration with spreadsheets produced by several of the victim-banks (*see* Thomas Decl.), the government provides scant explanation of how the spreadsheets factor into the restitution calculation. The government also acknowledges that any restitution the Court orders now would likely need to be modified down the road. (Gov. Sentencing Submission at 56).

Where the government fails adequately to support the amount of restitution it seeks, the Court has discretion to decline to order restitution. *See, e.g.*, *United States v. Gushlak*, 2011 WL 3159170, at *1-3 (E.D.N.Y. July 26, 2011) (declining to order restitution where the government failed to demonstrate the loss amount, including by failing to "describe its methodology in calculating losses," and made "assumptions" that "were not supported by the evidence it presented"); *United States v. Hernandez*, 2009 WL 113267, at *2 (D. Conn. Jan. 15, 2009) (denying restitution where the government failed to provide adequate evidence of the "actual loss due to fraud"); *see also United States v. Goodrich*, 12 F.4th 219, 231–33 (2d Cir. 2021) (vacating restitution order where the government failed to "adduce[] sufficient evidence" demonstrating causal link between the offense of conviction and the restitution amount sought); *United States v.Tsosie*, 639 F.3d 1213, 1222-23 (9th Cir. 2011) (vacating order when court provided no reasoning and only evidence was irregular spreadsheet); *United States v. Waknine*, 543 F.3d 546,

557-58 (9th Cir. 2008) (vacating order when supporting affidavits were "too summary and too conclusory to be sufficiently reliable"); *United States v. Jones*, 475 F.3d 701, 705-07 (5th Cir. 2007) (vacating order when court imposed restitution based solely on government assertions).

Because neither the Probation Office nor the government has adequately investigated, calculated, and proven the restitution amount, the Court should decline to impose restitution.

**III. The Court Should Decline to Impose Restitution Because Any Need for Restitution is Outweighed by the Burden on the Sentencing Process**

The Court should also decline to impose restitution because the calculation of restitution here is impractical and will burden the sentencing process to a degree that outweighs any legitimate need for restitution.

The MVRA generally makes restitution mandatory, but restitution is not required where the sentencing court finds that "determining complex issues of fact related to the cause or amount of the victim's losses would complicate or prolong the sentencing process to a degree that the need to provide restitution to any victim is outweighed by the burden on the sentencing process." 18 U.S.C. § 3663A(c)(3)(B); *see also* 18 U.S.C. § 3663(a)(1)(B)(ii) ("To the extent that the court determines that the complication and prolongation of the sentencing process resulting from the fashioning of an order of restitution under this section outweighs the need to provide restitution to any victims, the court may decline to make such an order."); *Hsu v. United States*, 954 F. Supp. 2d 215, 222 (S.D.N.Y. 2013) (court "had the discretion to decline ordering restitution" where "identifying Hsu's victims and their loss amounts would be a lengthy and fact-intensive determination that would delay and burden the sentencing process"); *United States v. Ferguson*, 584 F. Supp. 2d 447, 458 (D. Conn. 2008) (finding case "sufficiently complicated so as to make the MVRA inapplicable" where identifying all victims of securities fraud would "severely complicate and prolong the sentencing process," fashioning restitution order would

involve high level of "detail and precision," and government admitted it did not know the identity or location of all victims).

This Court has the discretion to decline to order restitution here and should so decline so as to avoid "becom[ing] embroiled in intricate issues of proof." *United States v. Reifler*, 446 F.3d 65, 136-37 (2d. Cir. 2006). The complex issues of fact surrounding causation and the amount of actual loss merit application of Section 3663A(c)(3)(B) to this case. Determining the amount of each victim's actual compensable loss would require this Court, at a minimum, to distinguish among categories of loss that are attributable to Mr. Hwang, others at Archegos like Mr. Becker, and the victims' own independent conduct and decisions—for example, the banks' decisions on how to hedge the swaps and how soon to liquidate those positions following the collapse of Archegos.

The Court would also need to engage in the burdensome task of eliminating the impact of market forces on the value of the securities held by the banks and in Archegos's portfolio to isolate the loss caused by the fraud. *See United States v. Rutkoske*, 506 F.3d 170, 179 (2d Cir. 2007) ("Many factors may cause a decline in share price between the time of the fraud and the revelation of the fraud.") (citing *United States v. Ebbers*, 458 F.3d 110, 128 (2d Cir. 2006)). As noted, the record currently contains insufficient information for the Court to make any of these determinations.

Declining to impose restitution would not only avoid embroiling the Court in extensive factual disputes but would also be warranted for two additional reasons. First, no realistic payment schedule exists that would permit Mr. Hwang to pay in full the purported losses claimed by the victims. Although "the MVRA makes clear that the defendant's ability to pay should not be considered in determining the amount of restitution," *United States v. Catoggio*, 326 F.3d

323, 329 (2d Cir. 2003), a sentencing court still must specify "the manner in which, and the schedule according to which, the restitution is to be paid, *in consideration of . . . the financial resources and other assets of the defendant*," 18 U.S.C. § 3664(f)(2) (emphasis added).

Given the significant volume of losses claimed by numerous victims, the Court would need to decide on a schedule considering Mr. Hwang's assets, which amount to less than 0.6 percent of the $9.8 billion in restitution that the government requests. (*See* PSR ¶ 177 (listing net worth of at most approximately $55.3 million, which includes joint assets, and which could be reduced by further liabilities).) This process magnifies the complexities involved in ordering restitution in this case, where no realistic schedule exists to cover in full the purported losses claimed by the victims. *See United States v. Dharia*, 284 F. Supp. 3d 262, 274-75 (E.D.N.Y. 2018) (noting that the cost of resolving complex issues of restitution "would cut into the already insufficient funds of the defendant").

Second, even if this Court decides that restitution would be impracticable, the victims would remain free to seek compensation directly from the government pursuant to the process of forfeiture and remission, under which the victims could obtain a share of any forfeiture judgment that this Court imposes (to the extent the Court orders forfeiture at all). *See, e.g.*, *Sharma*, 2021 WL 861353, at *3 (concluding that a remission program was preferable to restitution because of the "large number of victims and the difficulty of ascertaining their specific losses"); *Dharia*, 284 F. Supp. 3d at 274-75 (observing that remission "avoids delaying the defendant's sentencing for further court hearings, which in the end could only provide the claimants with permission to wait in line for funds"); *Hsu*, 954 F. Supp. 2d at 222 ("The Court had the discretion to decline ordering restitution in the circumstances where Hsu's victims were already being compensated through forfeiture.").

Here, the government has asked the Court to impose a forfeiture money judgment of $12,352,849,075.16, which is more than 20 times Mr. Hwang's maximum net worth. (PSR ¶ 177.) Although the Court should decline to impose such a money judgment, including for the reasons below, to the extent the Court orders this money judgment, it would exhaust Mr. Hwang's assets, and any victims would be able to seek compensation from the government. Because determining restitution here is impractical, and because the victims may be compensated through forfeiture, the Court should exercise its discretion to decline to impose restitution.

## IV. The Court Should Decline to Impose Restitution Because the Government has Failed to Meet Its Burden to Establish by a Preponderance of the Evidence that Actual Losses to Victims Were Caused by the Offense Conduct and the Amount of Any Losses

The Court should decline to impose restitution for the additional reason that the materials submitted to date do not carry the government's burden of establishing by a preponderance of the evidence either that the victims' losses were caused by the offense conduct, the amounts of the losses sought, or that the categories of losses sought are properly compensable.

It is well established that "[t]he government bears the burden of proving the amount of loss sustained by the victim by a preponderance of the evidence." *United States v. Donaghy*, 570 F. Supp. 2d 411, 423 (E.D.N.Y. 2008) (citing 18 U.S.C. § 3664(e); *United States v. Reifler*, 446 F.3d 65 (2d Cir. 2006)). "[A] sentencing court may award restitution only for losses directly resulting from the conduct forming the basis for the offense of conviction." *United States v. Germosen*, 139 F.3d 120, 131 (2d Cir. 1998). Further, "restitution may be awarded only in the amount of losses directly and proximately caused by the defendant's conduct." *United States v. Gushlak*, 728 F.3d 184, 194-95 (2d Cir. 2013) (emphasis omitted).

The government has not met its burden of demonstrating either that the losses were caused by Mr. Hwang's conduct or the amount of those losses. Because this Court lacks the information necessary to calculate the appropriate restitution amount for the victims, it should decline to impose restitution, or at most delay the determination of restitution as described above. 18 U.S.C. § 3664(d)(5).

### A. The Government Has Not Established that Mr. Hwang's Conduct Caused the Victims' Losses

As a threshold matter, the government has not met its burden of proving that Mr. Hwang's conduct caused any actual loss under either a market manipulation scheme or a misrepresentation scheme. (*See* Def. Sentencing Submission at 41-48.)

For a person to qualify as a "victim" entitled to restitution, the MVRA requires that the person was both "directly and proximately harmed" by the offense of conviction. 18 U.S.C. § 3663A(a)(2). "Courts have interpreted this language to impose cause-in-fact and proximate cause requirements, respectively." *Goodrich*, 12 F.4th at 229; *see also Robers v. United States*, 572 U.S. 639, 645 (2014) (The MVRA "has a proximate cause requirement."). To find cause in fact, the defendant's conduct must have been a necessary factor in bringing about the victim's harm. *Goodrich*, 12 F.4th at 229. To find proximate cause, the question is "whether the harm alleged has a sufficiently close connection to the conduct," which courts evaluate based on whether that harm was "foreseeable" to a defendant. *Id.* at 232 (holding that the record lacked sufficient evidence to prove that the defendant "knew of, or could have reasonably foreseen, that his participation in the public market scheme would result in the harm to private placement purchasers"). Although restitution is not limited to "losses caused by the actions of that defendant" during the conspiracy, it requires that "actions of that defendant's co-conspirators" be

reasonably foreseeable. *Id.* at 228 (citing *United States v. Boyd*, 222 F.3d 47, 50–51 (2d Cir. 2000)).

As Mr. Hwang's Sentencing Submission sets forth, the prosecution has not met its burden of proving that losses caused by the misrepresentations of Scott Becker were foreseeable to Mr. Hwang. (*See* Def. Sentencing Submission at 44.) Trial testimony made clear that Mr. Hwang did not direct any material misrepresentations that led to a loss by a counterparty bank, nor did he have knowledge that others at Archegos were making such misrepresentations. *See* U.S.S.G. § 2B1.1 n.(C)(i) (defining "actual loss" as the "reasonably foreseeable pecuniary harm that resulted from the offense"). Although Mr. Becker testified generally that he had an "understanding that it was [his] job to lie to the banks," when pressed, he testified that there was not a single instance in which Mr. Hwang had instructed him to lie to the banks. (Trial Tr. 803:13-17; 1190:10-20.) Mr. Becker also testified that he never told Mr. Hwang that Mr. Becker had lied to the banks. (Trial Tr. 1191:10-1192:1.)

Similarly, the government has not shown that any misrepresentations by Mr. Tomita were foreseeable to Mr. Hwang. (*See* Def. Sentencing Submission at 44-45.) Mr. Tomita made statements about how he had been "instructed" to lie to banks, but on cross-examination, he clarified that he made these misrepresentations on his own, not at Mr. Hwang's direction and did not claim that Mr. Hwang was aware of them. (Trial Tr. 3039:3-12; 3409:24-3410:8.)

Mr. Hwang also did not directly interact with the banks and therefore would not have known about the lies told by Mr. Becker and Mr. Tomita. (*See* Def. Sentencing Submission at 46.) While Mr. Tomita regularly dealt one-on-one with the banks with respect to trading, and Mr. Becker regularly dealt one-on-one with the banks with respect to margin and credit (Trial Tr. 4068:13-21), Mr. Hwang was not on the calls they regularly had with the counterparties (Trial

Tr. 4068:1-6). Mr. Tomita kept Mr. Hwang apprised of conversations with the banks at a "high level" and did not inform him of misrepresentations. (Trial Tr. 3425:5-17.)

Even if Mr. Hwang understood that counterparties would not have extended margin to Archegos if they had known the size of Archegos's positions, or that Mr. Hwang sought to keep Archegos's positions confidential, there was no evidence that Mr. Hwang had direct knowledge of purported misrepresentations. (*See* Def. Sentencing Submission at 46-47.) Limiting disclosure of information to counterparties is consistent with industry practice, as a former employee of UBS testified and Mr. Tomita confirmed. (Trial Tr. 180:23-181:4; 4078:5-7.)

Given the dearth of evidence regarding misrepresentations involving Mr. Hwang, the government has focused on Mr. Hwang's actions in the week that Archegos collapsed. However, when Mr. Hwang joined calls with the counterparties during that week in March 2021, Mr. Hwang told them the truth: they learned from Mr. Hwang the actual amount of capital Archegos had, in contrast to the false number Mr. Becker had previously provided. (Def. Sentencing Submission at 47 (citing Trial Tr. 1354:12-1355:19).)

To the extent there were any misrepresentations on a March 25, 2021, call that Mr. Hwang had with counterparties, the government has failed to show that those misrepresentations caused any losses. (*See* Def. Sentencing Submission at 47-48.) The statements made during that call were also not made in service of obtaining trading capacity; nor would banks have provided capacity at that point. The banks issued Archegos default notices and began liquidating their hedges the very next day. (Trial Tr. 1615:6-18.) For example, Bryan Fairbanks from UBS testified that, prior to the call with Mr. Hwang on March 25, 2021, "[UBS] had determined that we were going to default the client." (Trial Tr. 336:11-12.) Indeed, not a single witness testified

that Mr. Hwang's statements on that call contributed in any way to the losses suffered by the counterparties.



The government's reliance on *United States v. Marino* is misplaced. (Gov. Sentencing Submission at 23.) In that case, the defendant argued against causation based on how his actions perpetrating the fraud were not as "wantonly fraudulent" as others' actions, and that the extent of losses was not foreseeable. 654 F.3d 310, 321-24 (2d Cir. 2011). In present case, however, Mr. Hwang's position is not that his actions were not as "wantonly fraudulent" as those of others by a matter of degree, but rather that his actions did not cause the losses at issue at all.

**B.    The Government Has Not Established the Amounts of the Victims' Losses**

6

[redacted]

---

[redacted]

7 [redacted]

minimal["

























## V. The Court Should Decline to Order a Forfeiture Money Judgment

The government filed a Proposed Forfeiture Order seeking a judgment in the amount of $12,325,849.16 from Mr. Hwang. This Court should decline to enter that order for two reasons, in addition to the reasons set forth in Mr. Hwang's opening sentencing submission.

First, an order of forfeiture in this case would violate *Honeycutt v. United States*, in which the Supreme Court held that forfeiture "is limited to property the defendant himself

actually acquired as the result of the crime," because there is no evidence that Mr. Hwang ever took possession of any of the proceeds of any offense. *See* 581 U.S. 443, 434 (2017). To the contrary, the government's position at trial was that any ill-gotten gains were funneled back into Archegos to maintain the purported market manipulation scheme. This is evident from the government's own sentencing submission, which characterizes Mr. Hwang's "gains" in the following manner: "first Hwang obtained margin loans from Archegos's counterparties and, second, Hwang used those margin loans—and the profits of manipulative trading—to pay for additional trades." (*See* Gov. Sentencing Submission at 30-31.) Absent from the government's submission is any representation that Mr. Hwang personally took possession of the margin loans or profits of manipulative trading. Accordingly, the Court should decline to impose a forfeiture money judgment.

Second, the Court should decline to impose a forfeiture money judgment because the government asks the Court to order forfeiture under 18 U.S.C. § 1963 (for Count One) and under §§981(a)(1)(c) and 982(a)(1) and 28 U.S.C. §2461(c) (for Counts Two through Eleven), but the statutes lack a textual basis for imposing a personal money judgment in place of forfeiture of specific assets derived from the crime. *See United States v. Surgent*, 2009 WL 2525137, at *5-16 (E.D.N.Y. Aug. 17, 2009), *abrogated by United States v. Awad*, 598 F.3d 76 (2d Cir. 2010); *see also DSI Assoc. LLC v. United States*, 496 F.3d 175, 183 n. 11 (2d Cir. 2007) (noting that the statutory provision governing forfeitures under RICO and criminal forfeiture orders imposed pursuant to Section 853 "are so similar in legislative history and plain language as to warrant similar interpretation") (internal quotation omitted). Section 981(a)(1)(c), for example, authorizes forfeiture of "any property . . . which constitutes or is derived from proceeds traceable to the crime." 18 U.S.C. §981(a)(1)(c). A money judgment is in no way "traceable to" the

offenses of conviction. Although the Second Circuit has foreclosed this argument in the context of the Controlled Substances Act by explicitly disagreeing with the Eastern District's interpretation, *see Awad*, 598 F.3d 76, that case was decided incorrectly.

**VI. Conclusion**

For the foregoing reasons, Mr. Hwang respectfully requests that the Court decline to order restitution as impractical. *See* 18 U.S.C. § 3663A(c)(3). In the alternative, the Court should defer the determination of restitution for 90 days, *see* 18 U.S.C. § 3664(d)(5), order the government to submit documentation (including sworn statements and exhibits from each victim) supporting any request for restitution, and afford Mr. Hwang the opportunity to respond. The Court should also decline to impose a forfeiture money judgment.

Dated: New York, New York
November 18, 2024

Respectfully submitted,

MORVILLO ABRAMOWITZ GRAND
IASON & ANELLO P.C.

By: */s/ Brian A. Jacobs*
Brian A. Jacobs
Chloe Lewis

565 Fifth Avenue
New York, NY 10017
(212) 856-9600

*Counsel for Defendant Bill Hwang*