

*U.S. Department of Justice*

*United States Attorney*
*Southern District of New York*

The Jacob K. Javits Building
26 Federal Plaza, 37th Floor
New York, New York 10278

January 21, 2025

**VIA ECF AND EMAIL**

The Honorable Alvin K. Hellerstein
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

  Re: *United States v. Hwang and Halligan*,
     **S1 22 Cr. 240 (AKH)**

Dear Judge Hellerstein:

  Pursuant to the Court's order dated January 8, 2025 (ECF Doc. 379), the Government respectfully writes to submit to the Court a proposed restitution order and an amended schedule of victims. The Government's proposed restitution order for defendant Sung Kook (Bill) Hwang is attached as Exhibit A. The Government's proposed amended schedule of victims is attached as Exhibit B, submitted under seal. The Government has also collected each of the individual requests for restitution it has received, combined as Exhibit C, submitted under seal. The Government encloses a list of excluded claims, filed under seal as Exhibit D. Finally, the Government's proposed restitution order for defendant Patrick Halligan is attached as Exhibit E. The Government respectfully requests that the Court enter the proposed restitution orders and award restitution in the amount, and to the persons and entities, set forth in the schedule of victims.

### Form of Proposed Order for Hwang

  The Government's proposed restitution order, Exhibit A, reflects the Court's directives during the December 19, 2024 proceeding and agreements reached between the parties. As reflected in the text of the proposed restitution order, the Government has drafted a proposal that, if adopted, would distribute restitution in two phases: First, available funds would be distributed *pro rata* to individual employee victims in the amounts of the deferred compensation losses. Second, after the first category has been fully satisfied, available funds would be distributed *pro rata* to the bank victims and to individuals with outstanding claims for attorneys' fees and expenses. Additionally, and as directed by the Court at the last conference, the proposed order sets forth a schedule by which Hwang may liquidate his assets to enable restitution payments[1] and

---

[1] During the December 19, 2024, sentencing hearing, the Court contemplated a liquidation plan for Hwang's interest in the Archegos Fund of Funds. Because the Court subsequently forfeited

specifies that 50% of the order will be due and payable within one year and the remaining 50% will be due and payable upon the conclusion of any appeals. The proposed order further restrains Hwang from dissipating the assets he owns or controls until such time as restitution is paid.

The Government shared the draft of its proposed order with counsel to Hwang on December 17, 2024 and has accepted and implemented certain defense comments in response. Defense counsel has informed the Government that its position on the Government's proposed order is as follows:

> The defendant expressly renews and preserves all prior objections, including but not limited to his objections to (1) the award of any restitution, (2) the specific amounts of restitution the Court found and may find in future proceedings, (3) the balance of restitution following the payments specified in in paragraphs 2(a) through 2(f) being due as 50% lump sum payments due (a) one year after the judgment is filed and (b) upon the Second Circuit's mandate, rather than pursuant to a payment schedule accounting for, among other things, Mr. Hwang's inability to pay, (4) the absence of joint and several liability, and (5) the Court's decision not to stay all restitution payments pending appeal. Subject to those and all prior objections, which the defendant expects to reiterate in a letter to be filed on January 24, 2025, the defendant does not otherwise object to the form of the proposed order based on the Court's December 19, 2024 rulings.

The Court should adopt the Government's proposed order, notwithstanding the defendant's renewed objections, for the reasons stated on the record at the December 19, 2024, hearing and because its structure affords the defendant a fair opportunity to unwind and monetize his assets in an orderly manner while also minimizing unnecessary delay to the victims in anticipated litigation over the recovery of other assets.

### Proposed Schedule of Victims

At the last conference, the Court found losses in specific amounts for bank victims and for certain former employees who had submitted requests for restitution. (Dec. 19, 2024 Tr. 51). Since that conference, the Government has received numerous requests from additional former Archegos Capital Management employees that they also be included in any final restitution award. The Government has collected the individual requests it has received, combined together as sealed Exhibit C, and created an index of the claims, Exhibit D.

---

that interest, ECF Doc. 375 (Preliminary Order of Forfeiture), the Government has omitted that category from the proposed order.

Based on the various requests, as well as records received from counsel to Archegos Capital Management, the Government has prepared Exhibit B, a proposed amended schedule of victims, composed as follows:

- Bank losses are included in the amounts found on the record at the December 19, 2024 conference (Dec. 19, 2024 Tr. 51; ECF Doc. 373);

- Individual employees' costs and attorneys' fees based on prior requests are included in the amounts found on the record at the December 19, 2024 conference (Dec. 19, 2024 Tr. 51; ECF Doc. 373);

- Individual deferred compensation losses set forth in Archegos Capital Management's records for all former employees except those employees ineligible to receive restitution or who have specifically declined to request it.

The Government's amended schedule of victims differs from the prior restitution schedule in two respects: First, the amended schedule includes numerous additional former employees who stand in a similar position to those for whom the Court has already ordered restitution, with the goal of treating all innocent former Archegos employees fairly and equally. Second, the amended schedule alters the amounts of a small number of the prior individual employee claims to conform them with all the others. Specifically, the restitution order provides compensation in the amount of deferred compensation contributions made by each employee—whether mandatory or elective—but excludes any amount of appreciation or accretion.[2]

To the extent Hwang challenges the additional individual claims as untimely, any such objection should be denied. For one thing, the Court has not yet entered a final restitution order nor the judgment in this case, nor have 90 days passed since sentencing, 18 U.S.C. § 3664(d)(5), so the time to incorporate these new claims has not passed. Nor would it be fair to preclude recovery to the individual victims as untimely in light of the fact that these claims promptly followed the Court ruling that innocent Archegos employees were "victims" under the Mandatory Victim Restitution Act. Moreover, many employees learned of their potential eligibility only after the December 19 conference, when the Government informed the entire group of former employees about the Court's ruling and their potential eligibility by notifying them through counsel to Archegos Capital Management, counsel to a pool of former employees, individual contact with certain represented former employees, and filings on the docket.

### Exclusions from the Schedule of Victims

A list of persons intentionally omitted from the schedule of victims is attached hereto as Exhibit D. These persons comprise two groups:

---

[2] "Accretion" refers to the annual gains from the amount of deferred compensation contributions made by each employee.

First, a small number of former employees have asked not to be included in a restitution award for personal reasons or to make more funds available to others. In deference to the wishes of these employees, the Government has intentionally omitted them from its revised schedule of victims.

Second, the Government has also omitted from the order any restitution for persons who were knowing participants in any of the charged offenses. *See United States v. Reifler*, 446 F.3d 65, 132 (2d Cir. 2006) (holding that a district court has no authority to order restitution to co-conspirators of the offense). Only three such persons have sought restitution: Andy Mills, Dave Park, and Daiki Taniguchi, *see* Ex. C. Though Mills, Park, and Taniguchi lost deferred compensation, they should not receive any restitution because they are not "victims" within the meaning of the restitution statues.

As demonstrated at trial, Mills, Park, and Taniguchi each held significant roles at Archegos during the period of the fraud and acted to assist Hwang with knowledge of at least some of Hwang's criminal aims.

*Andy Mills*

Mills served as the fund's Chairman and Co-CEO during the period of the racketeering conspiracy. (Trial Tr. 531 (Jones)).

Among other duties, Mills assisted in the effort to find new trade counterparties and to expand existing trading relationships. (*E.g.*, Trial Tr. 1037, 1052 (Becker)). In doing so, Mills provided inaccurate information to Archegos's trading partners. Mills, for example, sent counterparties and prospective counterparties a letter purporting to summarize "the major changes" that had been instituted at Archegos in the aftermath of Tiger Asia's guilty plea. (*See, e.g.*, GX 1002A). These changes included the assertions that "All trades are reviewed daily" and that "compliance has primary responsibility for reviewing and approving all trades," neither of which were true. (*Compare* GX 1002A at 4 *with* Trial Tr. 1805-07 (Piedra)). In addition, Mills was aware that Halligan and Becker were interacting with the banks on numerous other subjects in a less-than-forthright fashion. At one point, Halligan let Mills know that on the calls with the brokers Halligan and Becker were "purposefully opaque." (Trial Tr. 1037-38 (Becker)).

Moreover, and most significantly, in the days leading up to Archegos's collapse, Mills joined numerous other employees in misleading Archegos's counterparties about its financial condition. By March 24, 2021, for example, Archegos recognized that it would not meet its margin calls and would need to ask the banks for additional time to generate funds. Prior to having those calls, Mills participated in a planning meeting where he, Halligan, Hwang, Tomita, and Becker discussed what to tell the counterparties; among other things, the group decided to tell the banks that Archegos faced a "liquidity" problem not a "solvency" problem. (Trial Tr. 1123-24 (Becker)). Mills then led the calls to the banks. (*E.g.*, Trial Tr. 224-25 (Fairbanks), 1129-31 (Becker)). Mills described the problem as a "liquidity" issue, not a "solvency" issue (Trial Tr. 225 (Fairbanks)), even though he knew the statement was misleading. Mills omitted from these calls that Archegos

was internally projecting a $13 billion cash shortfall. (Trial Tr. 1131-32 (Becker)). He also misdescribed the portfolio to give the impression that it had significant FAANG names, when its largest positions were not any longer in Facebook, Apple, Amazon, Netflix, or Google. (*See* Trial Tr. 226-227 (Fairbanks), 1163 (Becker); GX 2521). And while Mills assured the banks that Archegos had a plan to raise cash by unwinding some positions, he privately acknowledged otherwise in internal Archegos communications, writing: "Pray that the markets rise tomorrow otherwise liquidation might be dire." (GX 239). Finally, when Archegos failed to unwind its positions as promised, Mills joined Hwang on a call with multiple banks on the evening of March 25, 2021, during which Hwang deliberately misled the banks about the liquidity of Archegos's largest positions. (GX 2504).

*Daiki Taniguchi.*

Taniguchi was one of the four traders who worked for Hwang and placed his trades daily. (Trial Tr. 3061 (Tomita)). In that role, Taniguchi implemented the trading strategies his coworker, Will Tomita, described at length at trial as orders "intentionally moved the prices up or down" as Hwang preferred. (Trial Tr. 3040 (Tomita)). In fact, because Taniguchi was a participant in the Bloomberg message thread between Hwang and the traders, many of the trading messages that the Government highlighted during the trial included Taniguchi. (*See, e.g.*, GX 3754 at 6; Trial Tr. 3096-97 (messages reflecting that Hwang's manipulative trading created a floor); GX 3056-I; Trial Tr. 3179 ("firm limit" instruction to Taniguchi); Trial Tr. 3198 (instruction to Taniguchi for a trade "in a very large size at a critical period before the market closes, presumably to impact the closing price, make the price go higher.")).

As it was to the other traders, the effect of the premarket trades, end-of-day trades, and high volume trades would have been observable and obvious to Taniguchi, and the trial record leaves no doubt that Taniguchi understood what he was doing. Indeed, at times, Taniguchi expressly offered strategies to Hwang with the assumption they would alter market prices, for example, on March 23, 2021, when he wrote, "DISCK suggest using 60.00-61.00 and be aggressive below 60.00 because some short term people see whether the stock can keep 60.00 floor as psychological level[.]" (*See also* Trial Tr. 3490 (Tomita)). Further evidence that Taniguchi understood he and the other traders were manipulating stock prices is reflected in GX 2924, where Tomita advised Taniguchi not to make comments like "we are attacking muddy waters or driving a stock price."

*Dave Park.*

Park was a senior analyst at the fund who worked daily with Hwang out of the Archegos corporate apartment when virtually all other employees were working remotely. (Trial Tr. 619 (Jones); Trial Tr. 1791 (Piedra)). At the apartment, Park would have witnessed Taniguchi and Tomita, as well as Austin Scholl and Peter DeSanto, implementing Hwang's trading directives throughout the day. In fact, GX 22, a photograph of the Archegos corporate apartment that the Government introduced at trial, depicts DeSanto, Scholl, Tomita, Taniguchi and Hwang on one of their all-day Zoom calls, and Park can be seen in the background sitting mere feet away from

Hwang. (*See* Trial Tr. 3134 (Tomita)). Thus, Park had a front-row seat to Hwang's manipulative trading strategy during the period of the offense conduct.

Park further understood that Hwang's price targets for the securities he was manipulating, like Viacom, were disingenuous. In a March 15, 2021 email, for example, Park directed Steven Chen, a junior analyst, that "we should revisit our price target for VIAC," and that Hwang's "price target for VIAC is $150 . . . Let's help him justify it." (GX 178). In other words, Park was telling Chen to put together an analyst report that would help "justify" Hwang's price target, instead of Chen coming to the price target himself through a review of company fundamentals. And, by that time, as the evidence at trial showed, Hwang had already pushed up the price of Viacom to levels that sell-side analysts, as well as his own analysts like Brendan Sullivan, did not understand or believe were justified. (Trial Tr. 2595 (Sullivan); Trial Tr. 2523 (Cahall)).

### Form of Proposed Order for Halligan

The Government's proposed restitution order for Halligan is attached as Exhibit E. The proposed order requires Halligan to pay restitution up to the amount of $2,085,000, which corresponds to Halligan's compensation during the period of the scheme and requires payment pursuant to a monthly installment plan as set forth in Presentence Investigation Report. The Government's proposed order credits any payments made by Halligan against the total amount due from Hwang, such that victims will not recover twice.

The Government has been in productive conversations with Halligan's counsel regarding sentencing issues, including restitution and forfeiture, which have contributed to the form of the Government's proposed order, but counsel for Halligan has not yet had an opportunity to comment on this specific proposal. The Government may further revise this order before Halligan's sentencing proceeding after receiving comments and objections from counsel.

**Conclusion**

The Government respectfully requests that the Court conclude the sentencing proceedings against defendant Hwang by entering the proposed restitution order, Exhibit A, ordering restitution in the amounts and to the victims identified in the schedule of victims, Exhibit B, and deny the defendant's remaining objections.

Respectfully submitted,

DANIELLE R. SASSOON
United States Attorney

By: _____
Matthew Podolsky
Alexandra Rothman
Samuel P. Rothschild
Andrew Thomas
Assistant United States Attorneys
Tel.: (212) 637-1947/-2580/-2504/-2106

Cc:   U.S. Probation Officer Johnny Y. Kim (via email)
      Counsel of Record (via ECF and email)