

1270 Avenue of the Americas, Ste. 816
New York, New York 10020
t: 212.344.4619
f: 212.202.4858
www.hdrbb.com

Hackensack Office
433 Hackensack Avenue, Ste. 1002
Hackensack, New Jersey 07601
t: 201.441.9056

Short Hills Office
830 Morris Turnpike, Ste. 304
Short Hills, New Jersey 07078
t: 973.467.1325

Rockland Office
2 Executive Boulevard, Ste. 300
Suffern, New York 10901
t: 845.357.7900

Miami Office
8821 SW 69th Court
Miami, Florida 33156
t: 305.419.2936

January 24, 2025

**VIA EMAIL**

Hon. Alvin K. Hellerstein
United States District Court
for the Southern District of New York
500 Pearl Street
New York, New York 10007

      Re:    *United States v. Hwang, et al.*
                Criminal No. 22-240 (AKH)

Dear Judge Hellerstein:

Over the past several years, this firm has served as pool counsel for multiple former employees of Archegos Capital Management ("ACM") in connection with the government's investigation and prosecution of the above-referenced matter, and now with respect to the issue of restitution. This letter is submitted on behalf of one of those clients, Mr. Dave Park, whom the government would have the Court exclude from the class of former ACM employees this Court has ruled are entitled to restitution under the Mandatory Victims Restitution Act (MVRA), 18 U.S.C. § 3663A. The government's conclusory and speculative presentation to the Court fails to establish by a preponderance of the evidence that Mr. Park was a knowing participant in the conspiracy charged by the government. Therefore, the Court should reject the government's demand that Mr. Park be excluded from inclusion in the Court's final restitution order.

As an initial matter, the government has known for almost four years that I represent Mr. Park and other former ACM employees. Nevertheless, the government did not provide me – or my clients – with timely notice that the Court had ruled that they were entitled to restitution; rather, after being alerted by ACM's corporate counsel, I communicated with the government on January 6, 2025 and demanded that our clients be treated the same as other former ACM employees on

whose behalf the government previously had advocated. Since that date, I have – on repeated occasions – asked the government to provide me with the factual basis for the government's determination that Mr. Park (and other of my clients) should be excluded from group of those entitled to restitution so that I could: (a) consult with my clients with an understanding of the actual factual basis for the government's opposition; and (b) have sufficient time to oppose the government's position on behalf of those clients who wished to proceed with a restitution claim over the government's objection. The government, however, simply ignored my repeated demands and never delineated for me the factual basis for their objections. As a result of being left in the dark, several of my clients simply chose not to proceed with a restitution claim. That is wrong.[1]

Mr. Park chooses otherwise.

Mr. Park was an analyst at ACM. The government has not opposed a restitution claim by any other ACM analyst. The only testimony at trial mentioning Mr. Park was that, during the Covid pandemic, he worked at the ACM corporate apartment. Will Tomita testified that when others could not get in touch with Mr. Hwang, they would try reaching Mr. Park to get Mr. Hwang's attention. There was no testimony about the substance of any of those conversations. The government also showed Mr. Tomita a picture (GX 22) of a Zoom meeting in which Mr. Park is in the background, sitting at the apartment's kitchen table, eating a meal. There was no evidence that Mr. Park participated in that conversation or any other conversation with the traders, no other

---

[1] It is possible that, after learning of the basis for the government's objection, those clients would have opted to forego submitting a restitution claim anyway. Nevertheless, it was improper for the government to withhold the factual basis for their position to the last moment, thereby preventing those clients from making an informed and intelligent decision regarding the issue of restitution. Indeed, despite my repeated requests for factual detail regarding the government's restitution position vis-à-vis each client, the government did not even send me a copy of its most recent January 22, 2025 restitution letter. Respectfully, that is *not* how the restitution process should be conducted by the government.

Hon. Alvin K. Hellerstein
January 24, 2025
Page 3

evidence introduced at trial implicating Mr. Park in the alleged criminal conduct and no evidence whatsoever about his role, knowledge or criminal intent.

In its restitution letter, to establish that Mr. Park was a knowing co-conspirator, the government relies upon the referenced photograph of Mr. Park eating at the corporate apartment while Mr. Hwang participated in a single zoom meeting with the traders, and the fact that "*virtually all other* [ACM] *employees were working remotely.*" Gov't Letter at 5 (emphasis added). The government includes the phrase "virtually all" because, as the trial evidence showed, *see* Trial Tr. at 691:14-20 (Jones Direct); Trial Tr. at 2592:25 to 2593:2 (Sullivan Direct), a second ACM senior analyst also worked at the corporate apartment during the pandemic – indeed, her regular working spot was the very kitchen table relied upon by the government to tie Mr. Park to the one Zoom meeting – and yet the government has not opposed restitution for that other senior analyst who had the same conclusory "front row seat to Hwang's manipulative trading strategy during the period of the offense conduct." Gov't Letter at 6.

The government's hyperbole to one side, three people (Mr. Hwang and two analysts) were present at the corporate apartment during the pandemic and none testified at trial; hence, the Court has not heard from them about how those three interacted at the apartment. But the government knows how they interacted because it interviewed the two analysts on multiple occasions, and they explained to the government that they generally occupied different spaces in the apartment to keep their distance from each other (it was the pandemic, after all), wearing a headset/earbuds (Mr. Hwang) or headphones (Mr. Park and the second analyst), with the analysts performing their own job responsibilities while providing Mr. Hwang with administrative support typically provided by his secretary (*e.g.*, getting papers signed, sending faxes), and Mr. Hwang taking telephone calls on the balcony. The entirety of the evidence at trial relating to Mr. Park was – and the government's

objection to Mr. Park is – nothing more than that he was present at the corporate apartment with Mr. Hwang yet, as this Court has recognized, "mere presence and mere association are not enough to prove conspiratorial intent." *United States v. Lopac*, 411 F. Supp. 2d 350, 361 (S.D.N.Y. 2006) (*citing United States v. Torres*, 901 F.2d 205, 220 (2d Cir. 1990)). As an analyst, Mr. Park was not involved in setting trading strategy, he did not conduct trades, and the government does not point to any evidence – much more substantial evidence – from which the Court could infer by a preponderance of the evidence that he was a knowing participant in the criminal conspiracy alleged by the government.

Rather, the government points to a single email to Steven Chen (GX 178) in which Mr. Park writes about Mr. Hwang's price target for Viacom: "Let's help him justify it." The government speculates that Mr. Park was telling Mr. Chen to ignore "company fundamentals" but Mr. Chen did not testify at trial and the government does not cite any trial testimony substantiating its own speculative characterization of what was meant or understood by this single email. Indeed, the role of the analysts at ACM was to provide analysis and information to Mr. Hwang, who tended to make decisions based upon gut instinct and relative values and relied on the analysts to crunch the numbers using, for example, discounted cash flow analyses in Excel. Thus, although construed nefariously by the government, Mr. Park simply was telling Mr. Chen – as explained to the government by Mr. Park – that he should investigate the assumptions that would be needed to support Mr. Hwang's price target so that the assumptions driving the price differences could be provided to Mr. Hwang to consider, which was the role of the ACM analysts. It does not prove criminal intent or knowing participation in the charged criminal conspiracy by a preponderance of the evidence.

Hon. Alvin K. Hellerstein
January 24, 2025
Page 5

The government relies on the Second Circuit's decision in *United States v. Reifler*, 446 F.3d 65 (2d Cir. 2006) for the proposition that "a district court has no authority to order restitution to co-conspirators of the offense," Gov't Letter at 4, but – in in *Reifler* – the co-conspirators excluded from restitution "had been tried and convicted alongside the defendant for the same offense." *Scanlon v. Greenberg Traurig*, 778 F. Supp.2d 56 (D.D.C. 2011) (distinguishing *Reifler*). Here, in contrast, the government's assertion that Mr. Park was a co-conspirator is conclusory and not based upon "*previously adjudicated* facts." *Id.* (emphasis in original) (*also distinguishing United States v. Martinez*, 978 F. Supp. 1442 (D.N.M. 1997) (refusing to order restitution to Indian casino that "had been deemed illegal through extensive litigation independent of the *Martinez* case"). That is, Mr. Park was not charged in a criminal indictment, he was not adjudicated a co-conspirator based upon a consideration by the Court of all the evidence in a separate adversarial proceeding, and he denies that he knowingly participated in the criminal conduct alleged by the government. *See In re Wellcare Health Plans, Inc.* 754 F.3d 1234, 1239 (11th Cir. 2014) (holding that Wellcare – which actually was charged in a federal criminal information with conspiracy to commit healthcare fraud and then entered into a deferred prosecution agreement – was not a victim entitled to restitution because it was "an admitted perpetrator of the scheme to defraud the government"). Rather, the government simply identified him (and others) as co-conspirators in response to a pretrial motion for purposes of application of the hearsay exception at trial and, perhaps more cynically, to dissuade Mr. Park and others from testifying at trial as defense witnesses. Under *Riefler*, that is not sufficient to exclude Mr. Park from the class of former ACM employees entitled to restitution. *Cf. United States v. Lazarenko*, 624 F.3d 1247, 1252 (9th Cir. 2010) (holding that individual actually named "as the primary co-conspirator *in the indictment*"

Hon. Alvin K. Hellerstein
January 24, 2025
Page 6

was not entitled to restitution where the evidence showed that he "knowingly participated in the conspiracy" and "profited greatly from the overall criminal enterprise").

Simply stated, the government's assertion that Mr. Park was a co-conspirator and, hence, properly excluded from the class of former ACM employees entitled to restitution, is entirely speculative and otherwise fails to prove Mr. Park's knowing and intentional participation in the alleged conspiracy by a preponderance of the evidence. Therefore, the Court should reject the government's objection and include Mr. Park in its final restitution order.

Thank you for the Court's consideration of this submission.

Respectfully submitted,

Mark A. Berman, Esq.

cc: All Counsel of Record (via ECF)